UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROMERO MONTE THOMAS,

                Plaintiff,              Case No. 1:23-cv-812

v.                                  Honorable Sally J. Berens

M. HASKE et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Teacher M. Haske and Sergeant S. Johnson. (ECF No. 1, PageID.2.)

Plaintiff alleges that, on June 13, 2023, he arrived at the classroom for his employment readiness class. (*Id.*, PageID.10–11.) Upon encountering his teacher, Defendant Haske, Plaintiff asked to be taken "off of this callout." (*Id.*, PageID.11–12.) Defendant Haske told Plaintiff that

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

signing off would result in Plaintiff being placed on "00" status. (*Id.*, PageID.12.) Plaintiff then told Defendant Haske that, in 2014, non-party R.G.C. Michael F. Andrews told Plaintiff that Plaintiff would not need to participate in the employment readiness class. (*Id.*, PageID.13.) Defendant Haske did not change his position, telling Plaintiff that attending the class is "a[n] R.G.C. requirement" and that Plaintiff would be placed on "00" status if Plaintiff did not participate. (*Id.*, PageID.14.) When Defendant Haske refused to look at Plaintiff's documents, Plaintiff called Defendant Haske an "a**hole.". (*Id.*, PageID.15 (asterisks added).) This prompted a verbal exchange, and Defendant Haske told Plaintiff to "[g]o sit the f*** down . . . ." (*Id.* (asterisks added).) Plaintiff states that at some point, Defendant Haske "pressed his body alarm summoning the assistance of additional correctional staff." (*Id.*, PageID.15–16.) Plaintiff alleges that by summoning other correctional staff, Defendant Haske "was making the statement that [Plaintiff] was being a 'disruptive' prisoner." (*Id.*, PageID.16)

Plaintiff complied with Defendant Haske's command and sat down at a computer terminal. (*Id.*) Ten seconds later, staff arrived. (*Id.*) Plaintiff was told to leave the classroom and wait in the hall. (*Id.*, PageID.16–17.) Plaintiff complied. (*Id.*) He was then placed in handcuffs and taken to a segregation "interview cage" pending a determination of whether Plaintiff would be confined to segregation or released to general population. (*Id.*, PageID.18–19.)

Immediately after Plaintiff was placed in the interview cage, Defendant Haske approached, asking Plaintiff to sign a paper stating that Plaintiff was refusing to take the employment readiness class. (*Id.*, PageID.20.) Plaintiff refused; he informed Defendant Haske that he was now willing to participate. (*Id.*, PageID.21.) Nonetheless, Defendant Haske demanded that Plaintiff sign the form. (*Id.*, PageID.22.) Plaintiff crumpled the form and threw it on the floor. (*Id.*) When Defendant

Haske gave Plaintiff a direct order to pick up the paper and give it back to Defendant Haske, Plaintiff refused. (*Id.*)

After Plaintiff threw the paper on the floor, Defendant Johnson walked into the room. (*Id.*, PageID.23.) When Defendant Haske told Defendant Johnson what Plaintiff had done, Defendant Johnson told Defendant Haske to write Plaintiff a ticket and that Defendant Johnson would "elevate it to a class one misconduct." (*Id.*)

Plaintiff was removed from the interview cage and was told by Defendant Johnson that Defendant Johnson was revoking Plaintiff's bond and placing Plaintiff in segregation pending a hearing for becoming belligerent with staff and destroying a state document. (*Id.*, PageID.24–25.) Plaintiff was charged with insolence, a class II misconduct, and was placed on "00" status. (*Id.*, PageID.25.) Plaintiff was also charged with "interference with administration of rules," which was elevated to a class I misconduct by Defendant Johnson. (*Id.*, PageID.26.) Finally, Plaintiff was charged with "disobeying a direct order," a class II misconduct. (*Id.*) The facts underlying the latter two misconducts are the same. (*Id.*, PageID.26–27.)

On June 21, 2023, Administrative Law Judge Tucker conducted a hearing on the class I misconduct of interference with administration of rules and class II misconduct of disobeying a direct order. (*Id.*, PageID.30, 33.) Plaintiff pleaded not guilty to the class I misconduct for interference with administration of rules but guilty to disobeying a direct order. (*Id.*, PageID.30–31, 34. 41, 43.) Plaintiff did not dispute the underlying facts. (*Id.*, PageID.35–36.)

Administrative Law Judge Tucker ultimately found Plaintiff not guilty on the charge of interference with administration of rules on the basis that the actions alleged did not amount to interference with the administration of rules. (*Id.*, PageID.38, 40.) Plaintiff received ten days of toplock and ten-days' loss of privileges for disobeying a direct order. (*Id.*)

The same day as the administrative hearing, a non-party lieutenant approached Plaintiff wanting to discuss the misconduct of "insolence," for calling Defendant Haske a "f\*\*\*\*\*\* a\*\*hole." (*Id.*, PageID.31–32 (asterisks added).) Plaintiff pleaded guilty and received five-days' loss of privileges. (*Id.*, PageID.32.) Plaintiff was released from ten days of temporary segregation on June 23, 2023. (*Id.*, PageID.32.)

Following his release from segregation, Plaintiff received an employment readiness refusal form on which he alleges Defendant Haske forged Plaintiff's signature, as well as a notice of leisure and yard restrictions. (*Id.*, PageID.48, 49.) Plaintiff also received a notice declaring Plaintiff "un-employable," prohibiting Plaintiff from re-applying for the employment readiness class for 30 days. (*Id.*, PageID.49.) Additionally, Plaintiff received notice that he was being reclassified. (*Id.*)

Plaintiff seeks an award of compensatory and punitive damages, as well as fees and costs.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

6

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff brings a single count of "malicious prosecution" against Defendants. (*Id.*, PageID.53.) In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment, which is cognizable under Section 1983. *Id.* at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007)) (assuming without deciding that such a claim existed). The *Sykes* court held that, to succeed on a Fourth Amendment malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09; *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes*, 625 F.3d at 308–09); *Gregory v. City of Louisville*, 444 F.3d 725,

727 (6th Cir. 2006).[2] There is no right to be free from malicious prosecution arising outside of the Fourth Amendment context. *Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002) (citing *Spurlock v. Satterfield,* 167 F.3d 995, 1006 n. 19 (6th Cir. 1999)).

Plaintiff does not appear to dispute the propriety of the either class II misconduct; indeed, he acknowledges that he pleaded guilty to both. Instead, Plaintiff challenges only the class I misconduct charge for interference with the administration of rules. Specifically, Plaintiff alleges that the class I charge of misconduct for interference with the administration of rules was initiated against Plaintiff, that Defendants participated in the decision to pursue the charge, that Defendants did not have probable cause to pursue the charge, and that the charge of interference with the administration of rules was resolved in Plaintiff's favor. However, Plaintiff does not allege—and cannot allege—that he suffered a deprivation of liberty because of the class I misconduct charge.

The Fourth Amendment on which a claim of malicious prosecution is based protects against unreasonable seizures, including warrantless arrests without probable cause. However, unlike in the event of a criminal arrest and prosecution, Plaintiff

> was already in state custody by virtue of his criminal convictions when Defendants allegedly "seized" him and placed him in segregation. In other words, he was already lawfully subject to all the limitations on liberty incident to arrest and imprisonment, including the possibility of confinement in segregation. Thus, transferring him from one area of the prison to a more restrictive area did not constitute a "seizure" under the Fourth Amendment, and did not require a warrant or probable cause.

*Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099 at *9 (W.D. Mich. July 8, 2021).

Put another way, a Fourth Amendment claim of malicious prosecution requires at its core that the plaintiff suffer "a 'deprivation of liberty'" as a result of the legal proceeding. *Sykes*, 625

---

[2] Despite its label, a Fourth Amendment claim for malicious prosecution does not require that a Plaintiff demonstrate that the defendant acted with malice. *Sykes*, 625 F.3d at 309–10. In fact, under established Fourth Amendment jurisprudence, a defendant's intent is irrelevant to the analysis, which rests on a determination of reasonableness. *Id.*

F.3d at 308–09 (quoting *Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir. 2007)). Even a person

criminally charged and prosecuted but who suffers no deprivation of liberty through arrest or

incarceration cannot maintain a claim for malicious prosecution. *Cummin v. North*, 731 F. App'x

465, 470 (6th Cir. 2018).

The Supreme Court has held that a prisoner has no "liberty interest" in remaining free from

disciplinary confinement to segregation. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). In

examining a due process claim, the *Sandin* Court explained:

> Admittedly, prisoners do not shed all constitutional rights at the prison gate, *Wolff*
> [*v. McDonnell*], 418 U.S.[539,] 555, 94 S. Ct. [2963,] 2974 [(1974)], but "'[l]awful
> incarceration brings about the necessary withdrawal or limitation of many
> privileges and rights, a retraction justified by the considerations underlying our
> penal system.'" *Jones*[ *v. N.C. Prisoners' Labor Union, Inc.*], 433 U.S. [119,] 125,
> 97 S. Ct. [2532,] 2537 [(1977)], quoting *Price v. Johnston,* 334 U.S. 266, 285, 68
> S. Ct. 1049, 1060, 92 L. Ed. 1356 (1948). Discipline by prison officials in response
> to a wide range of misconduct falls within the expected perimeters of the sentence
> imposed by a court of law.

*Id.* at 485. Accordingly, the Court held that the prisoner-plaintiff's "discipline in segregated

confinement did not present the type of atypical, significant deprivation in which a State might

conceivably create a liberty interest." *Id.* at 486. Without a liberty interest, there is nothing of

which Plaintiff could have been deprived for Fourth Amendment purposes. For that reason, the

Court will dismiss Plaintiff's Fourth Amendment claim for malicious prosecution.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an

appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See*

*McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly

dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be

frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   August 30, 2023                    /s/ Sally J. Berens
                                            SALLY J. BERENS
                                            United States Magistrate Judge

10